Matter of Suffolk County Dept. of Social Servs. (2005 NY Slip Op 51116(U))

[*1]

Matter of Suffolk County Dept. of Social Servs.

2005 NY Slip Op 51116(U)

Decided on June 23, 2005

Family Court, Suffolk County

Spinner, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 23, 2005

Family Court, Suffolk County
In the Matter of the Suffolk County Department of Social Services o/b/o ASHLEY C Children under the Age of Eighteen Years Adjudged to be Permanently Neglected by THOMAS C, Respondent.
NN-00000-05

Suffolk County Attorney
Attorney for Petitioner
400 Carleton Avenue
Central Islip, NY 11722
By: Frank KrotschinskyLegal Aid Society of Suffolk County
Family Court Bureau
400 Carleton Avenue
Central Islip, NY 11722
By: Kathleen PhillipsMiriam Solon-Weintraub
Law Guardian
119 Darrow Lane
Greenlawn, NY 11740

Jeffrey Arlen Spinner, J.
The Suffolk County Department of Social Services filed a Petition for Neglect against Respondent herein on January 24, 2005, alleging, upon information and belief, that Respondent placed ASHLEY C (DOB: 00/00/1996), the child alleged to be neglected herein, at imminent risk of becoming physically, mentally and emotionally impaired, in that Respondent's impaired mental condition and alcohol abuse seriously impeded his ability to provide the child with adequate guardianship, supervision and care, to wit: on or about January 7, 2005, Respondent was taken to Stony Brook University Hospital in an extremely intoxicated condition, was suicidal in that he had cut both of his wrists, Respondent was belligerent, slurring his words and extremely volatile with the hospital staff, requiring them to place him in restraints; and further that Respondent was arrested on or about December 7, 2004, and was charged with Operation of a Motor Vehicle while Intoxicated in the 2nd Degree, Criminal Possession of a Controlled Substance in the 5th Degree and Aggravated Unlicensed Operation of a vehicle in the 1st Degree; that Respondent is the sole care-giver for the child; and that the source and belief of the information contained in the Petition are the records of the Suffolk County Police Department CC:04-000000, the records of Stony Brook University Hospital and the records of Suffolk County Child Protective Services.
EVIDENCE ADDUCED AT THE HEARING
Following a series of adjournments and conferences, the Court set the matter down for trial. On May 9, 2005 the Court held a fact-finding hearing. Petitioner, through production of one witness in support of the Petition, and Respondent, through his own testimony and through production of one additional witness in opposition to the Petition, offered testimonial evidence. The Court was afforded ample opportunity to assess the demeanor, credibility and veracity of each of the witnesses who offered testimony in this proceeding.
Petitioner called ELAINE P, a Suffolk County Department of Social Services Case Worker for Child Protective Services, as its witness. She testified that she received this matter, regarding allegations of inadequate guardianship due to alcohol and drug use, on January 10, 2005, indicating Respondent had been taken to Stony Brook University Hospital on January 7, 2005 because he had consumed excessive quantities of alcohol and had slit his wrists (the hospital records were placed in evidence). She immediately contacted the Respondent about interviews, and saw the child at school and the Respondent at home; that the child had spent the weekend at her aunt's home; that during the interview, the child stated that she lives with her father and uncle, but also sees her mother, she further said she knows what alcohol is and Respondent drinks it "...if he's mad about something..."; that during the interview with Respondent, he admitted that he suffers from stress and anxiety, has a problem with alcohol, was on probation for an alcohol related offense and completed the program and counseling, describing himself as a "...binge drinker, I can't have just one beer...", he admitted to drinking twelve drinks at a time, stated he lives with his daughter and brother, and stated the child was in transit to her aunt's house when the incident occurred.
Upon cross-examination by Respondent's Attorney, Ms. P testified that she didn't know if the child had been alone with Respondent during any of the alleged incidents; that the child had previously lived with the aunt and has a room there; that Respondent has "adequate support" from friends and family members; that the child was guarded and well groomed; that Respondent told her he doesn't binge drink around the child, when he drinks it is binge drinking, and he puts the child with her aunt before he drinks; that Respondent further told her his brother-in-law took him to Stony Brook University Hospital during the incident in question, and the child has been residing with her aunt and uncle in Coram for the last four months.
Upon re-direct examination Ms. P testified that she was concerned about Respondent's brother who lives in the house, because he is not a parent and not able to make decisions. Upon re-cross examination by Respondent's attorney, she stated that the child cares very much for her father, and that the child stated that her father doesn't fall down and act silly.
Respondent testified on his own behalf, stating he has resided at his present address for 23 to 25 years. He stated that his brother, who is unemployed, lives with the child and him; that he has had custody of the child since 2001; that the child's mother "...comes and goes...", but that he never refuses her the opportunity to see the child; that the child attends A T M Elementary School in Central Islip and is doing "...very well...", she has continued to attend school there while living with her aunt in Coram, and she is transported to his house by her aunt or uncle to catch the school bus; that while he was on probation several years ago he completed alcohol rehabilitation; that he suffers from high anxiety and stress and has tried unsuccessfully to find a doctor who would accept his medical insurance; that he owns and operates his own exterior cleaning business; that as a regular [*2]practice, when he feels an anxiety attack coming on, he calls his family to come and get the child and take her to stay with them, and having previously lived with them, she has a room there; that, as to the incident that brought about this matter, on the morning of January 7, 2005, the child left for school, he was suffering from anxiety, he called his sister to pick up the child after school and take her to the sister's home in Coram; that he began drinking and then got the idea that if he put slash marks on his wrists he would have to go to the hospital and be seen by a psychiatrist and help him with his anxiety; that after putting the slash marks on his wrists he called his brother-in-law, who drove him to CPEP at Stony Brook University Hospital; that at the recommendation of Ms. P, he had the child go to reside with her aunt on January 10, 2005, where she has continued to reside; that since one week after his release from CPEP he has been seeing a psychologist once a week, who he takes the child to see with him every other session; that the psychologist referred him to a psychiatrist, who he has seen once for evaluation and twice since, and who has prescribed various medication which he is now taking to address his anxiety and stress; and that he hasn't had a drink in over 180 days.
Upon cross examination, Respondent stated that his anxiety attacks were usually months apart; that, as he previously stated, when he feels his anxiety getting very high, he would call his family to make arrangements for the child to go with them; that he hasn't had an anxiety attack since he began his new medications; that in the past he has been incarcerated for eight months due to driving while intoxicated, had attended therapy and been discharged; that the brother who lives with him doesn't work and is always home, but he doesn't leave the child with him when he feels an anxiety attack coming on, instead he sends her to his sister or other family members if necessary; and that his family knows about his anxiety, binges, etc., and they live in Terryville, Port Jefferson Station and Coram.
Upon cross examination by the Law Guardian, Respondent stated that his business is seasonal and he works at a different trade during the winter; that his anxiety is sometimes related to work, usually from running the business; that the last attack arose from the last driving while intoxicated incident; that the child does well in school, he attended parent-teacher conference the week before the trial herein, and he discusses what she wants to do when she grows up with her; that when he feels anxiety coming on, he asks the child where she'd like to go, because "...daddy has business to take care of...", and then he makes the necessary arrangement, so the child thinks it is work related, and doesn't know about the anxiety.
Respondent then called MICHELLE C, his sister, with whom the child presently resides. Upon direct examination, she testified that prior to January 7, 2005, the child had been at her home frequently since about three years of age; that she is aware of Respondent's alcohol problem, but is not concerned for the child because Respondent loves his daughter, cares for her, takes good care of her, and she is always around to see this level of care and devotion.
Upon cross examination by the Assistant County Attorney, Ms. C stated she has another sister and brother who also help out with Respondent and his daughter; that she took care of the child while Respondent was incarcerated for the prior driving while intoxicated incident; and that the child used to spend almost every other weekend at her house prior to being with her these past four months, concluding "I love her and believe she needs a woman in her life".
Upon cross examination by the Law Guardian, Ms. C stated that she is always available for the child; that she works Monday through Friday from 8 am to 4 pm, with four weeks vacation and one [*3]week personal time, the same job for the past 18 years; that she doesn't ever recall needing to tell Respondent to give the child to her, concluding "it's like I'm the grandmother she doesn't have".
Upon re-direct examination by Respondent's attorney, Ms. C stated that on January 7, 2005, Respondent made arrangements for the child to come to her before he even began the incident; that there were no incidents between Respondent's previous incarceration and this latest incident; and that the child now wants to go home.
FINDINGS OF FACT AND CONCLUSIONS OF LAW
This matter was commenced pursuant to Family Court Act, Article 10, Child Protective Proceedings, through the filing of a neglect petition. §1012(f)(i) thereof defines a "Neglected child" as "...a child less than eighteen years of age":
"(i)whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his parent or other person legally responsible for his care to exercise a minimum degree of care..."
Despite the dogged persistence of the Assistant County Attorney on behalf of his client, nowhere in the facts presented before this Court was it established that anyone legally responsible for this child has failed to exercise even a minimum degree of care. In fact, quite to the contrary, while there is much testimony from both sides indicating Respondent suffers from anxiety, stress and alcoholism, the evidence educed also clearly reveals not only Respondent, but his extended family, are actively engaged in ensuring that at no time do these conditions result in any imminent danger of the child's physical, mental and emotional condition becoming impaired. Instead of compelling the County Attorney to vigorously pursue this unsustainable charge before the Court, the Department of Social Services would have better fulfilled their mission by seeking to assist Respondent in his laudable efforts to do the best job possible for his daughter, rather than adding to his burden by instituting legal proceedings against him.
Furthermore, far from their exercising a minimum degree of care to ensure the safety of the child's physical, mental and emotional condition, Respondent and his siblings herein appear to exemplify the old fashioned extended family, where members assiduously worked together to address and manage problems one or more members might be experiencing. This Court takes very seriously its obligation to determine the best interests of the child, as well as taking into consideration every reasonable effort to keep a biological family intact. While it is beyond dispute that Respondent suffers from conditions that are serious and problematic toward meeting his responsibilities, that does not in and of itself serve as proof that he has neglected his child. This Respondent has set up workable fail-safes to ensure that his shortcomings do not result in the neglect of his child, and he has affirmatively sought and received the cooperation and support of his siblings in doing so. This is not a case of child neglect, but instead a matter of Respondent guaranteeing that he meets his responsibilities toward his daughter.
The nature of the matter before this Court is clearly one that rests solely on the factual determination of the trier of the facts. As the Appellate Division of the State of New York concluded in In Re Emily PP, 274 AD2d 681, 710 NYS2d 476 (3rd Dept. 2000), Family Court's factual determinations and resolutions of credibility issues are to be accorded great deference from this court and should not be disturbed unless clearly unsupported by the record (see Matter of Janique Y, 256 AD2d 1053, 682 NYS2d 706; Matter of Kim HH, [Jeane II], 239 AD2d 717, 718-719, 658 NYS2d [*4]480; Matter of Allyn WW, [Brian WW], 235 AD2d 837, 652 NYS2d 1012; Matter of Kathleen )), [Karen OO], 232 AD2d 784, 649 NYS2d 193).
The facts presented to this Court do not support any of the allegations of neglect leveled against the Respondent, and therefore, it is
ORDERED, that the application of the Suffolk County Department of Social Services for an order determining the child to be neglected and otherwise dealing with the child in accordance with the provisions of Article 10 of the Family Court Act, is hereby denied in all respects for the reasons hereinabove set forth; and it is further
ORDERED, that this proceeding shall be and the same is hereby dismissed and all orders entered under this docket number are hereby vacated and set aside.
This shall constitute the decision, judgment and order of the Court.
Dated: June 23, 2005
Central Islip, New York

____________________________________
HON. JEFFREY ARLEN SPINNER
Judge, County Court
Acting Judge, Family Court
PURSUANT TO SECTION 1113 OF THE FAMILY COURT ACT, AN APPEAL FROM THIS ORDER MUST BE TAKEN WITHIN 30 DAYS OF RECEIPT OF THE ORDER BY APPELLANT IN COURT, 35 DAYS FROM THE DATE OF THE MAILING OF THE ORDER TO APPELLANT BY THE CLERK OF THE COURT, OR 30 DAYS AFTER SERVICE BY A PARTY OR THE LAW GUARDIAN UPON THE APPELLANT, WHICHEVER IS EARLIEST.